UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARK A. SMITH,

                                                                                    **DECISION**
                                        Plaintiff,                              **and**
                        v.                                                      **ORDER**

JOHN NUTTAL,                                                        **04-CV-0200(F)**
JOHN DOE, and                                                        **(consent)**
JOHN DOE,

                                        Defendants.

_____

APPEARANCES:            MARK A. SMITH, *Pro Se*
                                    343962
                                    245 Whalley Avenue
                                    New Haven, Connecticut 06511

                                    ANDREW M. CUOMO
                                    Attorney General, State of New York
                                    Attorney for Defendants
                                    STEPHEN F. GAWLIK
                                    Assistant Attorney General, of Counsel
                                    107 Delaware Avenue
                                    4th Floor
                                    Buffalo, New York 14202


## JURISDICTION

On July 6, 2004, the parties to this action consented pursuant to 28 U.S.C. §

636(c) to proceed before the undersigned.  The matter is presently before the court on

Defendant's motion for summary judgment (Doc. No. 17), filed December 15, 2004.


## BACKGROUND and FACTS[1]

Plaintiff Mark A. Smith ("Plaintiff") commenced this civil rights action *pro se*

_____

[1] The Facts are taken from the pleadings and motion papers filed in this action.

pursuant to 42 U.S.C. § 1983 on March 26, 3004, alleging Defendant John Nuttal ("Nuttal"), and two others identified only as "John Doe" ("the John Doe Defendants").[2] refused to allow Plaintiff, who is Muslim, to receive a kosher Cold Alternative Meal ("CAM"), in violation of his rights under the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause.  In particular, Plaintiff maintains that although he was allowed to receive the Religious Alternative Meal ("RAM") diet, which is generally available to inmates who request it and which fully comports with the tenets of Plaintiff's Muslim faith, the RAM meal provides Halal[3] meat only once a week, whereas the CAM diet, which also comports with Muslim dietary requirements, provides meat products several times a week.[4]

As noted, on December 15, 2004, Defendant filed the instant motion for summary judgment (Doc. No. 17) ("Defendant's Motion"), and supporting papers including the Declarations of Assistant Attorney General Stephen Gawlik ("Gawlik") (Doc. No. 18) ("Gawlik Declaration"), and John Nuttall (Doc. No. 19) ("Nuttall Declaration"), Defendant's Statement of Facts Not in Dispute (Doc. No. 20) ("Defendant's Statement of Facts"), and Defendant's Memorandum of Law in Support of Motion for Summary Judgment (Doc. No. 21) ("Defendant's Memorandum").  In

---

[2] Because the two "John Doe" defendants, who have not been further identified, have not been served with the summons and Complaint, they have not been joined as parties to this action and have not submitted to personal jurisdiction in this court.  Fed. R. Civ. P. 4.

[3] "'Halal' foods are those prepared in accordance with Islamic religious law." *United States v. Bicaksiz*, 194 F.3d 390, 391 n. 1 (2d Cir. 1999) (citing Cyril Glasse, *The Concise Encyclopedia of Islam*, 133, 144, 148 (1989)).

[4] It is undisputed that both the RAM and CAM diets fully comport with Muslim dietary laws.

opposition to summary judgment, Plaintiff filed on February 7, 2005, Plaintiff's

Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment

(Doc. No. 24) ("Plaintiff's Memorandum"), a Statement of Facts in Dispute (Doc. No. 25)

("Plaintiff's Statement of Facts"), and the Declaration of Mark A. Smith (Doc. No. 26)

("Plaintiff's Declaration").  In further support of summary judgment, Defendant filed on

February 18, 2005, the Reply Declaration of Gawlik in Support of Defendant's Motion

for Summary Judgment (Doc. No. 28) ("Gawlik Reply Declaration").  Oral argument was

deemed unnecessary.

Based on the following, Defendant's motion for summary judgment is

GRANTED.


## DISCUSSION

Summary judgment of a claim or defense will be granted when a moving party

demonstrates that there are no genuine issues as to any material fact and that a

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The

court is required to construe the evidence in the light most favorable to the non-moving

party.  *Tenenbaum v. Williams*, 193 F.3d 58, 59 (2d Cir. 1999) (citing *Anderson, supra*,

477 U.S. at 255); *Rattner, supra*.  The party moving for summary judgment bears the

burden of establishing the nonexistence of any genuine issue of material fact and if

there is any evidence in the record based upon any source from which a reasonable

inference in the non-moving party's favor may be drawn, a moving party cannot obtain a

summary judgment.  *Celotex, supra*, 477 U.S. at 322; *see Anderson*, *supra*, at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex, supra*, 477 U.S. at 323-24 (1986) (quoting Fed. R. Civ. P. 56).  Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case."  *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). Rule 56 further provides that

> [w]hen a motion for summary judgment is made and supported as provided in
> this rule, an adverse party may not rest upon the mere allegations or denials of
> the adverse party's pleading, but the adverse party's response, by affidavits or

as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

Defendant argues in support of summary judgment that the policy of New York's Department of Correctional Services ("DOCS"), whereby the kosher CAM diet is provided only to Jewish and Hebrew Israelite inmates, while Muslims are restricted to the RAM diet, does not substantially burden Plaintiff's practice of his religion, Defendant's Memorandum at 3-6, and is rationally related to a legitimate penological interest, *id.* at 6-8, that Plaintiff's equal protection claim has already been litigated and rejected by other courts, *id.* at 9-11, Plaintiff's request for injunctive relief is moot, *id.* at 11-12, that Defendant was not personally involved in the decision denying Plaintiff's request to participate in the kosher diet program, *id.* at 12-13, and that Defendant is entitled to qualified immunity, *id.* at 14-15.  In opposition to summary judgment, Plaintiff explains that he "does not contend or allege that the Religious Alternative Meal (RAM) did not meet the dietary requirements of his religious beliefs but rather that as a practicing Muslim he [Plaintiff] was denied the right to eat the Cold Alternative Diet, unless he changed his religious affiliation, even after DOCS . . . . changed its policy permitting practicing Muslims to eat the Cold Alternative Diet."  Plaintiff's Memorandum at 5.  Plaintiff also concedes that the RAM diet comports with the dietary requirement of his religious beliefs, but maintains that he was denied the opportunity to receive the CAM diet, which typically contains more meat products, unless he designated his religious affiliation as Jewish, although other inmates who were not Jewish were provided the CAM diet.  Plaintiff's Memorandum at 4-5.  Plaintiff further maintains that

DOCS's policy of refusing to allow Muslim inmates to participate in the kosher CAM diet is not rationally related to any legitimate penological interest, *id.* at 6-8, denies that Plaintiff's equal protection claim has been previously litigated, *id.* at 8-10, asserts Defendant was personally involved in denying Plaintiff's request to receive the CAM diet, *id.* at 10-12, and maintains Defendant is not entitled to qualified immunity, *id.* at 13.  In further support of summary judgment, Defendant maintains that Plaintiff has failed to identify any material issue of fact precluding summary judgment.  Gawlik Reply Declaration ¶ 4.

Defendant is alleged to have violated Plaintiff's civil rights under 42 U.S.C. § 1983, pursuant to which an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States.  42 U.S.C. § 1983.  Section 1983, however, "'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Id.*  (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, *supra*, at 140).  Here, Plaintiff maintains that Defendant's refusal to permit Plaintiff to receive the CAM diet violates Plaintiff's First Amendment right to the free exercise of his religion, and Fourteenth Amendment right to equal protection under the law.  Complaint, First Claim for Relief.  Plaintiff's claims are without merit.

Although Plaintiff's religious liberty claim is only asserted under the First

Amendment, such claim derives from two independent sources, including the First

Amendment's Free Exercise Clause and § 3 of the Religious Land Use and

Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq.* ("RLUIPA").[5]

*Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (construing inmate plaintiff's

deprivation of religious liberty claim under both Free Exercise Clause and RLUIPA § 3).

Analyzing Plaintiff's claim under the RLUIPA, § 3 provides that the government

shall not "impose a substantial burden" on the "religious exercise" of inmates in certain

institutions unless the government demonstrates that the burden furthers a compelling

governmental interest by the least restrictive means.  42 U.S.C. § 2000cc-1(a); *see*

*Salahuddin*, *supra*, at 273.  "Religious exercise" is defined under the RLUIPA to include

"any exercise of religion, whether or not compelled by, or central to, a system of

religious belief."  42 U.S.C. § 2000cc-5(7)(A).  "Section 3 applies if 'the substantial

burden [on religious exercise] is imposed in a program or activity that received Federal

financial assistance.'" *Salahuddin*, *supra*, at 273 n. 2 (quoting 42 U.S.C. § 2000cc-

1(b)(1).  "In the prison context, this section sweeps broadly as '[e]very State . . . accepts

federal funding for its prisons.'" *Id.* (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 716 n. 4

(2005)).

Analyzing Plaintiff's claim under the First Amendment, "[t]he Free Exercise

_____

[5] Although Plaintiff does not specifically identify RLUIPA as a legal predicate for his § 1983 claim,
given Plaintiff's *pro se* status and the RLUIPA's applicability to Plaintiff's claim, the court construes the
Complaint as asserting a violation of the RLUIPA.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972)
(allegations of complaint drafted by *pro se* plaintiff held to less stringent standards than formal pleadings
drafted by attorneys).  RLUIPA was enacted after the Supreme Court declared the Religious Freedom
Restoration Act, 42 U.S.C. § 2000bb *et seq.*, unconstitutional as applied to state law.  *Allan v. Woods*,
2007 WL 496411, *3 (N.D.N.Y. Feb. 12, 2007) (citing *City of Boerne v. Flores*, 521 U.S. 507 (1997)).

Clause of the First Amendment is an 'unflinching pledge to allow our citizenry to explore . . . religious beliefs in accordance with the dictates of their conscience.'" *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)).   Because prisoners retain their right to religious freedom even when incarcerated, inmates are entitled to reasonable accommodation of their religious beliefs, including "religious dietary beliefs, as 'prison officials must provide a prisoner a diet that is consistent with his religious scruples.'" *Jackson*, *supra*, at 320 (citing cases and quoting *Bass v. Coughlin*, 976 F.2d 98, 99 (2d Cir. 1992)).

Prisoners do not abandon their constitutional rights at the "jailhouse door," *Bell v. Wolfish*, 441 U.S. 520, 576 (1979) (Marshall, J., dissenting), although "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)).   As such, "a challenged prison regulation is judged 'under a 'reasonableness' test less restrictive than that ordinarily applied': a regulation that burdens a protected right passes constitutional muster 'if it is reasonably related to legitimate penological interests.'" *Salahuddin*, *supra*, at 274 (quoting *O'Lone*, *supra*, at 349 (additional internal quotation marks omitted)).

At the threshold, whether asserted under the First Amendment or the RLUIPA, a religious liberty claim requires the prisoner demonstrate "that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin*, *supra*, at 274-75 (citing *Ford v. McGinnis*, 352 F.3d 582, 587 (2d Cir. 2003)).   "The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify

8

the impinging conduct," to shift the burden back to the inmate to "show that these articulated concerns were irrational." *Salahuddin*, *supra*, at 275 (citing *Ford*, *supra*, at 595) (internal quotations marks and brackets omitted).

In opposing summary judgment in the instant case, Plaintiff explains that he "does not contend or allege that the Religious Alternative Meal (RAM) did not meet the dietary requirements of his religious beliefs but rather that as a practicing Muslim he [Plaintiff] was denied the right to eat the Cold Alternative Diet, unless he changed his religious affiliation, even after DOCS . . . . changed its policy permitting practicing Muslims to eat the Cold Alternative Diet." Plaintiff's Memorandum at 5. As such, Plaintiff cannot meet the threshold requirement under both the RLUIPA and the Free Exercise Clause, that DOCS's policy of providing the CAM diet only to those inmates who declare themselves to be either of the Jewish or Hebrew Israelite faith places any burden, much less a substantial one, on any religious belief Plaintiff sincerely holds.

Nor is there any merit to Plaintiff's conclusory assertion that because no separate kitchen is used to prepare the RAM diet, the food contained in the RAM diet often comes into contact with utensils and cookware that has also been used to prepare pork and other non-Halal foods. Complaint, First Claim for Relief. Such assertions, if true, could demonstrate interference, with the free exercise of Plaintiff's religion. Plaintiff, however, has not submitted any evidence establishing that the use in the preparation of the RAM diet of utensils or cookware that has also been used to prepare non-Halal foods is prohibited by Muslim law, and without any evidence in support of the assertions, such assertions are merely conclusory and insufficient to avoid summary judgment. Rule 56(e); *Kia v. McIntyre*, 235 F.3d 749, 763 (2d Cir. 2000) ("A plaintiff

may not survive a properly asserted motion for summary judgment on the basis of conclusory allegations alone.").  Further, discovery in this action has concluded and Plaintiff does not contend that he has been prevented by Defendants from obtaining the requisite evidence necessary to support his claim.  Plaintiff's conclusory assertions regarding the use of improper utensils and cookware to prepare the RAM diet thus fail to avoid summary judgment.

Because Plaintiff has failed to meet the threshold requirement under either the RLUIPA or the First Amendment's Free Exercise Clause that DOCS's policy of permitting only Jewish and Hebrew Israelite inmates to receive the CAM diet substantially burdens any religious belief sincerely held by Plaintiff, the court need not address whether such policy furthered a compelling government interest, as required to withstand a challenge under the RLUIPA, or was related to a legitimate penological interest sufficient to withstand a First Amendment challenge.  Summary judgment in favor of Defendant is GRANTED insofar as Plaintiff alleges a violation of his religious liberty claim under both the RLUIPA and the Free Exercise Clause.

As for Plaintiff's Fourteenth Amendment equal protection claim, the court observes that Plaintiff essentially challenges that because the kosher CAM diet, which also comports with Muslim dietary laws, contains more meat products than the RAM diet, the refusal to permit Muslim inmates to eat the CAM diet, is tantamount to disparate treatment in violation of the Fourteenth Amendment's Equal Protection Clause.  Plaintiff's Memorandum at 5-6.  Plaintiff also challenges that DOCS's provision of a separate kitchen for the cooking and preparation of the kosher CAM diet, while not similarly providing a separate kitchen for preparation of the RAM diet such that Halal

10

food allegedly often comes into contact with the same utensils and cookware that is used to prepare pork and other non-Halal food for the general prison population, similarly violates Plaintiff's equal protection rights.  Complaint, First Claim for Relief. Plaintiff thus maintains that Defendants have discriminated against Muslims, including himself, by refusing to allow Muslims to eat the CAM diet without first designating their religion as Jewish on official prison forms.  *Id*.

Courts considering a plaintiff's claim that he has been denied equal protection by reason of treatment different from that afforded to other religious groups may rely on the standard established by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987), and *O'Lone*, *supra*. ("the *Turner/Shabazz* standard").

> While the *Turner/Shabazz* standard was established in the context of first amendment [*sic*] issues, it is also relevant to the assessment of equal protection claims in the prison setting.  As to such claims, the reasonableness of the prison rule and policies must be examined to determine whether distinctions made between religious groups in prison are reasonably related to penological interests.

*Benjamin v. Coughlin*, 905 F.2d 571, 572 (2d Cir. 1990) (citing cases).

Four factors must be evaluated in making the reasonableness determination, including

> [1] whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; [2] whether prisoners have alternative means of exercising the burdened right; [3] the impact on guards, inmates, and prison resources of accommodating the right; and [4] the existence of alternative means of facilitating exercise of the right that have only a *de minimis* adverse effect on valid penological interests.

*Salahuddin*, *supra*, at 274 (citing *Turner v. Safley*, 482 U.S. 78, 84 (1987)) (bracketed numbers added).

The first factor "is more properly labeled an 'element' because it is not simply a consideration to be weighed but rather an essential requirement." *Id*. (citing *O'Lone*,

*supra*, at 350, and *Turner*, *supra*, at 89).

Here, in support of summary judgment, Defendant Nuttall explains that although the CAM is provided specifically to Jewish inmates and Hebrew Israelites, the RAM diet was designed to accommodate the dietary requirements of a variety of religions, including Muslims, Hindus, Seventh Day Adventists, Buddhists, and Rastifarians, as well as inmates with special dietary needs based on medical issues.  Nuttall Declaration ¶ 7.  The RAM diet was designed to be served in the same fashion and at the same time as the prison's regular menu and is as nutritionally adequate as the regular meal. *Id*. ¶ 8.  Because the RAM diet is served to many religious groups and inmates with medical needs, the RAM diet allows DOCS to accommodate many inmates in an economically viable way. *Id*.

According to Nuttall, the CAM diet is provided only to those of the Jewish faith and Hebrew Israelites who keep kosher because, in addition to the Muslim dietary requirements, kosher dietary laws require rabbinical oversight regarding the manner in which the food is prepared, including how the animal from which the meat is obtained is killed, that certain prayers are recited and the mixing and handling of the food.  Nuttall Declaration ¶ 9.  Because the Halal food contained in the RAM diet is not prepared under the same rabbinical oversight as the kosher CAM diet, Jewish inmates cannot eat the RAM diet. *Id*.  The additional rabbinical requirements of the CAM diet renders the CAM diet more expensive than the RAM diet, *id*. ¶ 10, and limiting receipt of the CAM diet to Jewish inmates also minimizes the administrative burden inherent in preparing the kosher meals based on the special handling and preparation requirements. *Id*. ¶ 11.  There are thus both economic and administrative reasons to restrict receipt of the

12

CAM diet to only those inmates whose religious beliefs require they keep kosher. *Id.*

Defendant maintains that if Plaintiff had designated his religion as Jewish, Plaintiff

would have been provided with the CAM diet. *Id.* ¶ 12. In any event, Muslim inmates

can fully comply with the dietary requirement of their faith by eating the RAM diet. *Id.* ¶

13. Thus, the DOCS dietary food policy does not interfere with any religious tenet to

which Plaintiff adheres.

In opposition to summary judgment, Plaintiff does not challenge any of

Defendant's statements as untrue or inaccurate. Rather, Plaintiff argues that the

Defendant's proffered reasons for denying Muslims the right to receive the CAM diet

does not meet *Turner's* four-prong test. Plaintiff's Memorandum at 6-8.

The denial of the CAM diet to Muslims, however, has been upheld by other

district courts against equal protection claims. In *Muhammad v. Warithu-Deen Umar*,

98 F.Supp.2d 337, 344-45 (W.D.N.Y. 2000), the court, relying on *Allah v. Kelly*, No. 96-

CV-7323CJS(H) (W.D.N.Y. April 19, 1999) (Report and Recommendation adopted on

January 27, 2000)[6] upheld DOCS's RAM diet as reasonably related to legitimate

penological interests under the *Turner* criteria. In particular, in *Allah*, *supra*, the court

observed that the RAM diet addresses the dietary requirements of several religious

groups in addition to the medical needs of some inmates, that inmates could purchase

additional food items from the prison commissary and receive food packages from

outside sources to supplement their diets, the RAM diet permitted a large number of

inmates to dine at the same time as inmates who received the regular prison diet,

---

[6] A copy of *Allah*, *supra*, is attached as Exh. B. to Defendant's Memorandum.

thereby posing a minimal burden on DOCS facilities, and that the plaintiff had failed to demonstrate how receiving the CAM diet would allow for greater adherence to his religious beliefs.  Similarly, in *Abdul-Malik v. Goord*, 1997 WL 83402, * 8 (S.D.N.Y. Feb. 27, 1997), the court stated that the quantity of meat available in RAM diet as compared to CAM diet "sets up a false standard of measurement" because both RAM and CAM diets are nutritionally adequate and that provision of RAM diet meets all four prongs of the *Turner* criteria given both the expense of and lack of a reliable supply of Halal meat.

It is significant that in the instant case, Plaintiff does not argue, nor is there any evidence in the record establishing, that the RAM diet Plaintiff currently receives varies in any significant manner from the RAM diet upheld against Fourteenth Amendment equal protection challenges in *Muhammad*, *supra*, or *Abdul-Malik*, *supra*.  As such, based on Defendant Nuttall's description of the RAM diet, and Plaintiff's failure to show that the RAM diet he currently receives varies from the RAM diet that has consistently been upheld by courts against equal protection challenges, the court finds that Defendant has not, by refusing to permit Plaintiff to receive the CAM diet without first designating his religion affiliation as Jewish, subjected Plaintiff to any disparate treatment based on Plaintiff's religion.

Furthermore, there is no merit to Plaintiff's assertion, Plaintiff's Memorandum at 9-10, that DOCS has changed its policy to permit other practicing Muslims to receive the CAM diet without completing the DOCS forms to change their religious affiliation to Jewish or Hebrew Israelite.  In support of this assertion, Plaintiff relies on a May 31, 2001 Memorandum ("May 31, 2001 Memorandum"), Plaintiff's Declaration Exh. B., from Rabbi Zahara Davidowitz-Farkas ("Rabbi Davidowitz-Farkas") to New York State Jewish

Correctional Chaplains, regarding the CAM diet.  In the May 31, 2001, Rabbi

Davidowitz-Farkas discusses how as a result of the Second Circuit's decision in

*Jackson*, *supra*, any inmate who requests the CAM diet, even if such request is based

on insincere religious beliefs, is to be provided with the CAM diet so long as the inmate

completes the relevant forms to change the inmate's religious affiliation to Jewish.  May

31, 2001 Memorandum at 1.  According to Rabbi Davidowitz-Farkas, although an

inmate may not meet the criteria to be considered

> Jewish by the standards of the New York Board of Rabbis, the Jewish chaplain
> can sign these forms after recording that the request is approved due to the
> category of "self-declared."  The form does not then make the statement that the
> Jewish Chaplain is endorsing the inmate as "Jewish."  By indicating that the
> inmate is self-declaring rather than being approved through documentation of
> conversion, it no longer is a religious matter.

May 31, 2001 Memorandum.

In *Jackson*, *supra*, the Second Circuit held that in determining whether a

prisoner's particular religious beliefs are entitled to free exercise protection, the inmate

claimant need not be a member of a particular organized religious denomination to

demonstrate sincerity of religious belief; rather, the relevant inquiry is not whether, as

an objective matter, the specific religious belief is accurate or logical, but whether the

beliefs professed by the claimant inmate are sincerely held and whether, in the inmate's

own scheme of things, such beliefs are religious.  *Jackson*, *supra*, at 320-21.  As such,

in *Jackson*, the trial court erred when it granted summary judgment in favor of the

DOCS defendants who had denied the claimant inmate's request to receive the kosher

CAM diet after the prison's Jewish Chaplain determined that the inmate did not meet

either of the two criteria to be Jewish, given that the inmate was neither born Jewish nor

had completed a formal conversion process.  *Id*.

Neither *Jackson*, *supra*, nor the May 31, 2001 Memorandum, however, establishes, as Plaintiff asserts, Plaintiff's Memorandum at 5, that any inmate has been permitted to receive the CAM diet without first completing the requisite forms to designate his religious affiliation as Jewish or Hebrew Israelite.  Rather, both *Jackson*, *supra*, and the May 31, 2001 Memorandum emphasize the need for an inmate to complete such forms prior to receiving the CAM diet.

Furthermore, Plaintiff has proffered nothing in support of his assertion that other Muslims have been permitted to receive the CAM diet without first completing the forms to change their religious affiliation to Jewish.  Nor does Plaintiff assert that he has been denied discovery on this issue, and discovery concluded on October 29, 2004.  As such, Plaintiff's assertion, without more, is merely conclusory which is insufficient to avoid summary judgment.  Rule 56(e); *Kia*, *supra*, at 763.

Because the record establishes the absence of any material issue of fact which, if decided in Plaintiff's favor, could support judgment in Plaintiff's favor, on his claims under the RLUIPA, or the First or Fourteenth Amendment, the court will not address Defendant's alternative arguments that Defendant was not personally involved in the decision to deny Plaintiff's request to receive the CAM diet, and that Defendant is entitled to qualified immunity.

As such, Defendant's motion for summary judgment on Plaintiff's equal protection claim is GRANTED.

## **CONCLUSION**

Based on the foregoing, Defendant's motion for summary judgment (Doc. No.

17) is GRANTED.  The Clerk of the Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       March <u>14</u>, 2007
             Buffalo, New York